## REDINGER v. CRESPO.

APPEAL from the District Court of Arecibo.

No. 756.—Decided March 8, 1912.

DAMAGES—ANIMALS—RESPONSIBILITY OF OWNER—OVERSEER.—Construing the
provisions of sections 1804 and 1806 of the Civil Code in the light of the
general principles of law and of jurisprudence it is indisputable that the
owner of animals is liable for the damages caused by their trespassing upon
the property of others, and the fact that said animals were under the actual
care and control of the overseer of the farm does not avoid this responsibility
although responsibility may attach to the overseer also for said damages.

ID.—POSSESSION OF ANIMALS—ACTUAL AND CONSTRUCTIVE POSSESSION.—Even
if only the party in whose possession the animals causing the damage
might be would be liable the fact that the overseer of the property had
charge of them does not relieve their owner of liability because the pos-
session exercised by the manager was not in his own right but in the name
of his principal.

The facts are stated in the opinion.

*Mr. Antonio Suliveres* for appellant.

*Messrs. Ricardo Agrait Aldea* and *José Martínez Dávila*
for respondent.

MR. JUSTICE MACLEARY delivered the opinion of the court.

This appeal had its origin in an action brought by Cam-
den Redinger against Francisco Crespo to recover damages
which he alleged that he had sustained by reason of the dep-
redations of defendant's goats and cattle on his farm and
the destruction of forty orange trees and other injuries
amounting altogether to five hundred and fifty dollars ($550).
On the trial proof was introduced by each party, and judg-
ment was rendered declaring that the complaint of the plain-
tiff was established and the damages proven in the sum of
four hundred dollars ($400), and adjudging that the plain-
tiff should recover from the defendant that amount and all
costs.

From this judgment the defendant accordingly took an
appeal to this court and the case is pending here for deci-
sion, after being heard on oral argument and on briefs duly

filed by the respective parties. The facts are very briefly that the plaintiff and the defendant owned farms adjoining each other in the municipality of Vega Baja, and that the defendant owned cattle and goats which were kept on his farm in care of the manager. It is alleged and proven that during the months of March and April of last year animals belonging to the defendant made trespasses upon the land of the plaintiff and destroyed forty orange trees. The defendant alleges as a matter of defense that under the statutes of Porto Rico, to wit, the Civil Code, sections 1804 and 1806, is is the only person in whose possession the animals may be who is responsable for the damages done by them while trespassing on the land of another. These sections, so far as at all applicable to this case, read as follows:

"Section 1804.—The obligation imposed by the preceding section is demandable, not only for personal acts and omissions, but also for those of the persons for whom they should be responsible.   *   *   *

"Owners or directors of an establishment or enterprise are equally liable for the damages caused by their employes in the service of the branches in which the latter may be employed or on account of their duties   *   *   *.

"The liability referred to in this section shall cease when the persons mentioned therein prove that they employed all the diligence of a good father of a family to avoid the damage.

"Section 1806.—The possessor of an animal, or the one who uses the same, is liable for the damages it may cause even when said animal should escape from him or stray.

"This liability shall cease only in case the damage should arise from *force majeure* or from the fault of the person who may have suffered it."

The District Judge of the Arecibo district in rendering this decision based the same upon a resolution which it is unnecessary to copy here.

The whole case turns virtually on one point—that is to say, who is liable for the damages, the owner of the animals or the manager of the farm having actual custody of them? It

appears from an examination of the authorities that the prin-
ciples of the Spanish and the American law are very simi-
lar in respect to the liability of an owner under such cir-
cumstances.  Manresa, the celebrated Spanish commentator,
in regard to this matter, expresses himself as follows:

"For the same reason, any person who on account of his trade,
profession or any other circumstances, has another in his employ or
under his control or custody, must require him to perform his task
with the necessary activity and diligence; and if for want of these
qualifications damage should be caused, he who has in his employ or
under his control the person who caused the damage, should be liable
to the injured person either because he has not exercised due care
in the supervision of the acts of his employes or subordinates, or
because as the latter lacked, as a rule, the means to answer in damages
personally, it is not equitable that the person who is injured through
the fault of another should be deprived of a sufficiently effective action
to claim compensation, etc."  12 Manresa's Commentaries, 608 and
609.

"The liability imposed by section 1903 on the persons who may
be held liable for others is not a subsidiary one, but a direct one, as
required by the cause that produced it; and it is so established by the
law by reason of the noncompliance with the duties imposed by the
special connection of authority or superiority existing between the
person who must repair the damage and the person who caused
the same by his acts or omissions."  12 Manresa's Commentaries,
611 and 612.

The same writer continues thus:

"Hence, in view of that inability (meaning inability to control the
instinct of animals) it is admitted that any person who owns or uses
an animal on account of its usefulness, or for his comfort or recreation,
is of course liable, by the mere fact of its possession or use, for all
the contingencies and damages that may arise, and implicitly accepts,
likewise by virtue of this fact, the consequent liability, and this pre-
supposes the existence of an implied or tacit consent thereto on the
part of the possessor of or person using the animal which caused the
injury, with the obligation to answer for the same.  This is the con-
struction that it is thought should be given, in actions for damages,
to the maxim, *Cujus commoda ejus incommoda, nam commoda et*

*incommoda interse reciprocantur;* for although the damage cannot be considered *stricto jure* as a direct consequence of the ownership or use, it is always an indirect or remote consequence which should be explained on the principle *causa causae est causa causati* whenever the reson for the liability is sought to be determined.'' 12 Manresa's Commentaries, 621 and 622.

And further the same author writes in subsequent pages as follows:

''The meaning of section 1905 is quite plain and it explicitly appears from the very language thereof.  Punishment is inflicted thereby on the person through whose fault or negligence damage is caused by animals, when that person could and should have prevented the damage from being done by the use and employment of said animals, but who did not take the necessary precaution for the prevention thereof, or because, even taking said precaution, said damage could not have been avoided; for the risk incident to their use ought to be thrown on him because from the moment he makes use of said animals he thereby voluntarily accepts the consequences that might ensue from said use.  Therefore, when the damage caused is the proper and natural consequence of the use of the animal doing the damage, independently of any extraneous interference or any other cause that cannot be imputed to the possessor or person using said animal, they must bear said consequences, indemnifying losers for the damage that has been caused, whether or not there is negligence or want of care, because they knew the risk they were running by possessing or using said animals.''   Manresa's Commentaries, 626 and 627.

The American authorities are virtually to the same general effect.  We find them condensed in 2 Cyc., 378-379, reading as follows:

PARTIES LIABLE.

'' (I) *Owner or Keeper.*—No one is liable in damages for injuries by an animal which he does not own, harbor or control; but one who keeps, harbors or has the charge of vicious animals is liable for injuries caused by them, regardless of ownership, and even when such keeping is without the consent and against the wishes of the animal's owner.

.'' (II) *Who is Owner or Keeper.*—Harboring means protecting, and one who treats a dog as living at his house, and undertakes to

control his actions, is the owner or keeper within the meaning of the law; but the casual presence of an animal on his premises, if not so treated, does not constitute him such owner or keeper. If the head of a family, having possession and control of a house or premises, suffer or permit an animal to be kept on the premises in this way he may be regarded as keeper, whether the animal be owned by his child or his wife; and where a married woman has all the rights of a *feme sole* in respect of her separate property, she may be liable as keeper though the animal be actually owned by her husband, though this is not necessarily so. So, too, a corporation, or the officers thereof, an innkeeper, or a ship may be liable. A person who knowingly permits a dog to be kept on his premises, by a servant or agent, is a keeper within the purview of the statute; but this is not true where the employe occupies a separate residence on the employer's premises. The fact that others than defendant had some part in taking charge of an animal does not prevent his being the keeper within the meaning of the statute." 2 Cyc., 378–379 and cases cited.

The law as announced by both the Spanish and the American authorities plainly makes the owner and the keeper both liable for the trespasses of the animals running at large, and it matters not whether the goats or cattle which did the mischief were in the actual care and custody of the owner thereof or under the control of the manager of his farm. In either case the owner is liable, as it plainly appears by the foregoing authorities; but even if it should be as claimed by the appellant that only the party in whose possession the animals might be found would be liable, still it is clear that the defendant had a sufficient possession of the animals to establish his liability. Possession under the Civil Code of Porto Rico is delned in sections 433 and 434, which reads as follows:

"Section 433.—Natural possession is the holding of a thing or the enjoyment of a right by any person. Civil possession is the same holding or enjoyment joined to the intent of holding the thing or right as one's own.

"Section 434.—Possession is exercised upon things or rights, either by the same person who holds and enjoys them, or by another in his behalf."

It may be that the owner did not have direct control and actual or natural possession of the animals in his own person; but he certainly had possession of them through his agent, as set out in section 434. Then under a proper construction of our Civil Code the possession of the animals was properly held to be in the owner thereof. This is the law also on the American Continent, as set forth in a leading California case. Mr. Justice Bennett in the opinion in that case used the following language:

"The above rules respecting possession in Spanish and Mexican law do not differ materially from those of the French law. It is necessary, says Domat, to distinguish in the general idea which is formed from the word possession, a right and a fact; the right to possess, and the actual detention, which is a fact. (1 Domat, lib. 3, tit. 7.) Possession taken in a proper sense is the detention of a thing, which he, who is master of it, or who has reason to believe that he is so, has in his own keeping, or in that of another person by whom he possesses. (Id. 469, lib. 3, tit. 7, sec. 1, art. 1.) Again, the same writer says, that possession implies a right and a fact; the right to enjoy annexed to the right of property, and the fact of the real detention of the thing, that it be in the hands of the master or of another for him. (Id. lib. 3, tit. 7, sec. 1, art. 2.) Again, one may possess corporeal things whether they be movables or immovables, but, according to the differences of their nature, the marks of the possession of them are different. Thus, one may possess movables by keeping them under lock and key or having them otherwise at one's disposal. Thus, one possesses cattle, either by shutting them up or giving them to·be kept. Thus, one possesses a house by dwelling in it, or trusting it to a tenant, or building in it. Thus, one possesses lands by cultivating them, reaping the fruits, going and coming through them, and disposing thereof at pleasure. But although possession implies the detention of what we possess, yet this detention ought not to be understood as if it were necessary to have always either in our hands or in our sight the things of which we have possession. But after the possession has been once acquired, it is preserved without an actual detention." *Suñol* v. *Hepburn,* 1 Cal., 263–264.

Under the authorities quoted and others which might be cited in considerable numbers we find the judgment of the

court below to have been amply justified and that there is no reason to disturb the same. It should be accordingly affirmed.

*Affirmed.*

Chief Justice Hernández and Justices Wolf, del Toro, and Aldrey concurred.